**Suzzann R. MAHLER**

v.

**TAMPAX, INCORPORATED and/or Aetna Casualty & Surety Company.**

Supreme Judicial Court of Maine.

Sept. 28, 1978.

---

Hamilton & Hardy by William P. Hardy, Lewiston (orally), for plaintiff.

Robinson, Hunt & Kriger by Sarah M. Allison, Portland (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Because a review of the record convinces us that a Workers' Compensation Commissioner based his decision dismissing Suzzann R. Mahler's petition for compensation on a "misapprehension of undoubted facts,"[1] we feel compelled to sustain her appeal from the pro forma decree of the Superior Court adopting that decision.

Beyond summarizing the procedural background, the commissioner's entire reference to the facts and his conclusions thereon was as follows:

"It is noted that the testimony of Dr. K. Kuck, emergency physician at St. Mary's General Hospital relates to examination performed by him on the 7th day of September, 1976, which is inconsistent with the medical testimony offered by the employee based on history relating to September 22, 1976.

This is inexplicable to this Commission and strikes at the heart of the credibility of the employee which is found not to be acceptable by this Commission.

Under these circumstances the pending Petition for Award of Compensation is dismissed."

The petitioner had testified that on September 6, 1976, while at home, she bent over and, on arising, her back "cricked." She received prompt medical treatment by a specialist in "Emergency Room Medicine," and on September 14th she returned to her employment. Eight days later she slipped on a wet floor and fell, landing "[h]alf on my buttock and half on my back."

Victor Parisien, M.D., an orthopedic specialist, began an extended course of treatment on September 28th for what he diagnosed as a "soft tissue injury to the low back and neck" caused, he opined, by "her injury of the 22nd of September."

Dr. Parisien knew of the previous bending episode, testifying that he had seen the x-rays taken under the direction of the Emergency Room Specialist and, "I also got that from [Miss Mahler]."[2] The orthopedic

---

1. *Dailey v. Pinecap, Inc.*, Me., 321 A.2d 492, 495 (1974).

2. On cross-examination Dr. Parisien was pressed as to whether the low back strain was consistent with the September 6th event and answered:

"Q Doctor, is it medically probable, more probable than not, that had you been given a history of a bending episode with pain upon straightening, that this could be consistent with your diagnosis of a low back sprain?

. . . . .

A Well, I have to put it in a little more information than just what she gave me. *If that, indeed, is what happened, just what she said, then the answer is yes. But there is more to it than that. Her pain, she told me, disappeared completely. She had no pain at all. She went back to work. She worked for a period of about a week—*

COMMISSIONER: If you left that question right where it originally was then she had no subsequent incidents, for example at that time, if you had talked to her immediately after that accident, you would have attributed it 51/49 to that incident at home, would you not?

WITNESS: If I had seen her immediately after the first incident at home, yes." (emphasis supplied)

specialist had supervised a continuing course of treatment for the petitioner between September 28 and December 20, 1976, the day before the Commission hearing.

The record contains a letter from John P. Greene, M.D.,[3] marked "Employer's Ex. # 1." 39 M.R.S.A. § 93(3). Dr. Greene did not testify and the record leaves uncertain whether the letter was properly admitted, since Miss Mahler's counsel did not formally consent to its introduction. Although the commissioner wrote in his decision that "employer's Exhibit # 1 was received," petitioner's counsel, in his brief, does not concede "that this report was ever admitted in evidence," and the opposing counsel has not argued otherwise. This letter, however, does contain the following: "The patient denies having had previous difficulty with her back or neck prior to the injury on September 22," and concludes: "The objective examination at the present time does not indicate any disability of her back or neck."

We conceive the dismissal order to be premised on the commissioner's disbelief of the petitioner's testimony, i. e., that she, in fact, had received a compensable injury on September 22, 1976. In short, he must have concluded that the disability diagnosed and treated by Dr. Parisien was the product of the bending episode of September 6th and not from the fall at work on September 22nd.

We are convinced that the commissioner erroneously recalled the facts when, five weeks after the second hearing (eighty-three days having elapsed between the first and second hearings), he signed the decree now before us.

As we have analyzed this record, we can find no inconsistency between the histories recited by Dr. Kuck and Dr. Parisien. They are entirely consistent with each other and with the petitioner's own testimony, and fully support an appropriate compensation award.

Counsel for the employer agreed there was no issue of notice, the petitioner having testified that on the day following the fall at work, "I told my Supervisor, and she told [a named person, apparently in a position of authority]."

The record leaves no doubt that Dr. Parisien knew of the "cricked" back episode and treatment thereof by Dr. Kuck, the Emergency Room Specialist. The commissioner might have drawn the hasty inference from the quoted excerpt in Dr. Greene's letter that if Dr. Greene was not informed of the prior episode, neither was Dr. Parisien, thus leading him to find an "inconsistency" between the histories of the September 6th and 22nd events. On the other hand, the finding of "inexplicable" inconsistency may have stemmed from the answer of Dr. Parisien to the question, as delimited by the commissioner (quoted in footnote 2 herein), the latter having failed to recall the doctor's qualifications to his answer (as emphasized).

■ If the commissioner relied on matters outside the record and not in evidence to reach his ultimate conclusion, his decree is erroneous as a matter of law. *Justard v. Oxford Paper Company*, Me., 328 A.2d 127, 129 (1974); *Crosby v. Grandview Nursing Home*, Me., 290 A.2d 375, 379 (1972).

■ Competent evidence is lacking to support the commissioner's findings. As in *Justard v. Oxford Paper Co.*, Me., 384 A.2d 441, 443 (1978), we must remand the case for the Commission's reevaluation of the record conjoined with such further admissible evidence as the parties may offer.

The entry is:

Appeal sustained.

The pro forma judgment of the Superior Court is vacated.

Remanded to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

3. Dr. Greene examined Miss Mahler once on November 1, 1976, at the request of defendant Aetna Casualty & Surety Company.

It is further ordered that the employer pay to employee an allowance of $550.00 for her counsel fees, plus her reasonable out-of-pocket expenses for this appeal.

DELAHANTY, J., did not sit.